UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUBEN JONES, | : |
| Plaintiff, | : Civ. No. 17-1949 (FLW) (LHG) |
| v. | : |
| | : **OPINION** |
| STEVEN PALONI et al., | : |
| Defendants. | : |

**FREDA L. WOLFSON, U.S.D.J.**

## I. INTRODUCTION

The plaintiff, Ruben Jones, is a state prisoner who is incarcerated at Northern State Prison, in Newark, New Jersey. He is proceeding pro se with a civil rights complaint asserting claims pursuant to 42 U.S.C. § 1983. Because this Court previously granted Mr. Jones leave to proceed *in forma pauperis*, the complaint must now be reviewed under 28 U.S.C. § 1915(e), 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the following reasons, the complaint is dismissed without prejudice.

## II. BACKGROUND

The factual allegations of the complaint will be taken as true for the purposes of this opinion. The complaint names as defendants St. Francis Medical Center ("St. Francis"), a hospital in Trenton, New Jersey, and three individual doctors, Steven Paloni, M.D., Helmi Saud Do, M.D., and Scott D. Miller, M.D. (Compl., ECF No. 1.)

In November 2006, Mr. Jones underwent knee surgery at St. Francis, with the involvement of Dr. Miller and Dr. Paloni. (*Id.* ¶¶ 12–17.) Mr. Jones asserts that Dr. Paloni, apparently an anesthesiologist, told Mr. Jones "that he would be injecting a needle into the right foot between the fourth & fifth metatarsals to numb his leg before undergoing surgery." (*Id.* ¶ 16.) Following the surgery, Mr. Jones alleges that he continued to suffer "excruciating pain and swelling in his knee and ankle." (*Id.* ¶ 20.)

Mr. Jones returned to St. Francis in December 2006 due to continued swelling of his ankle. (*Id.* ¶ 21.) He asserts that he "made a vehement effort to explain to the defendant Helmi Saud Do, that the swelling and excruciating pain in his right foot was independent of the surgically repaired knee" and explained "that the pain he was experiencing was in the exact same location where the anesthesiologist had injected the plaintiff with a needle to numb his leg prior to surgery." (*Id.* ¶ 22.) Mr. Jones alleges that while Dr. Saud Do ordered an ultrasound scan of Mr. Jones's right leg and foot, the doctor otherwise disregarded his complaints. (*Id.* ¶¶ 21–22.)

Mr. Jones states that he continued to suffer excruciating pain for the following eight years. (*Id.* ¶¶ 23–24.) Mr. Jones went to a podiatry clinic in February 2014, where an x-ray revealed a metallic object between the fourth and fifth metatarsals of his right foot. (*Id.* ¶ 25.) He was again admitted to St. Francis on June 6, 2014, and the metallic object was surgically removed. (*Id.* ¶ 26.) Mr. Jones reports that his "postoperative course was uneventful." (*Id.*)

Mr. Jones notes that he filed a late notice of tort claim in December 2014, "which was granted by the court on/or about February of 2015." (*Id.* ¶ 27.)

The complaint alleges that each of the defendant doctors "was deliberately indifferent to plaintiff's serious medical condition and deprived plaintiff of life, liberty or property without due process of law, in violation of the Eight [sic] and Fourteenth Amendments." (*Id.* ¶¶ 30, 34, 37.)

Mr. Jones alleges that Dr. Miller and Dr. Paloni were responsible for leaving a metallic object in his foot during the November 2006 surgery. (*Id.* ¶¶ 33–39.) He asserts that Dr. Saud Do failed to provide proper medical treatment that would have revealed the metallic object in his foot in December 2006. (*Id.* ¶¶ 29–32.) The complaint seeks compensatory and punitive damages. (*Id.* ¶¶ 32, 36, 39.)

### III.  STANDARD OF REVIEW

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner (1) is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), (2) seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A, or (3) asserts a claim concerning prison conditions, *see* 42 U.S.C. § 1997e(c). The PLRA directs district courts to sua sponte dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam); *see also Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (per curiam) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d

Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017) (per curiam). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### IV. DISCUSSION

The Court construes the complaint as asserting claims under 42 U.S.C. § 1983.[1] A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

---

[1] Indeed, Mr. Jones makes clear in his complaint that "[a]ll courses of action herein, are brought under the provision of 42 U.S.C. § 1983." (ECF No. 1 ¶ 2.)

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law.  *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

An incarcerated plaintiff may state a § 1983 claim for violation of the Eighth Amendment where institutional staff have provided inadequate medical care.  *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993); *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976); *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  Claims under § 1983 are subject to New Jersey's two-year statute of limitations for personal-injury claims.  *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (per curiam) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)); *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 349 (D.N.J. 2015) (citing *Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 828 (3d Cir. 2011) (per curiam)).  The accrual of a cause of action is a matter of federal law and generally coincides with the time that the plaintiff suffers injury.  *See Kach v. Hose*, 589 F.3d 626, 634–35 (3d Cir. 2009).  Pursuant to the "discovery rule," however, accrual and the running of the limitations period may be delayed until "the plaintiff discovers or should have discovered with 'due diligence' that his rights had been violated."  *Brownstein v. Lindsay*, 742 F.3d 55, 70 (3d Cir. 2014); *see also Dique*, 603 F.3d at 185; *William A. Graham Co. v. Haughey*, 568 F.3d 425, 438 (3d Cir. 2009) (examining whether plaintiff "had sufficient information of possible wrongdoing to place it on inquiry notice or to excite storm warnings of culpable activity." (internal quotation marks and alteration omitted)).

Mr. Jones alleges that Dr. Miller and Dr. Paloni erroneously left a metallic object in his foot during surgery in November 2006.  (ECF No. 1 ¶¶ 16–19.)  He contends that Dr. Saud Do

5

erroneously failed to detect this metallic object during an examination in December 2006. (*Id.* ¶¶ 20–22.) Mr. Jones indicates that he did not learn of the metallic object in his foot until a podiatric examination in February 2014, and he then had it removed in June 2014. (*Id.* ¶¶ 25–26.) His subsequent recovery was, apparently, "uneventful," (*id.* ¶ 26), and the complaint does not allege any further injury or treatment, (*see id.*).

The occurrences that would typically signal accrual of a claim—the acts by the individual defendants and the resulting injury—had all occurred by late 2006. The Court may apply the discovery rule, however, to toll the accrual until Mr. Jones had notice of his injury and who was responsible for it. But, an applying this doctrine could only delay the accrual of Mr. Jones's claims until February 2014, when an x-ray revealed the metallic object in his foot.[2] Accordingly, the two-year limitations period for Mr. Jones's § 1983 claims ended in February 2016. Because Mr. Jones's complaint is dated March 2, 2017 and was not received by the Court until March 21, 2017, the statute of limitations as elapsed.[3]

The Court also considers whether the limitations period was suspended or tolled. "'State law, unless inconsistent with federal law, also governs the concomitant issue of whether a limitations period should be tolled.'" *McPherson v. United States*, 392 F. App'x 938, 944 (3d Cir. 2010) (quoting *Dique*, 603 F.3d at 185). Statutory tolling under New Jersey must be based

---

[2] The Court notes Mr. Jones's allegation that he explained to Dr. Saud Do in December 2006 that his foot pain was independent from his knee surgery and "that the pain he was experiencing was in the exact same location where the anesthesiologist had injected the plaintiff with a needle to numb his leg prior to surgery." (ECF No. 1 ¶ 22.) It thus appears that there could be an argument that Mr. Jones should have had inquiry notice of the metallic object in his foot at that time. Nonetheless, interpreting the facts alleged most favorably to Mr. Jones, as the Court must on a preliminary screening, the Court will assume for the purposes of this opinion that Mr. Jones lacked notice of his alleged injury until February 2014.

[3] While Mr. Jones indicates that he received judicial approval for late filing of a notice of tort claim with the state, (ECF No. 1 ¶¶ 27–28), this has no bearing on the timeliness of his complaint under the statute of limitations of his federal claims brought here.

on a specifically identified basis. *See, e.g.*, N.J. Stat. Ann. § 2A:14–21 (minority or insanity); N.J. Stat. Ann. § 2A:14–22 (non-residency of persons liable). Nothing in the complaint, however, supports any of the statutory bases for tolling.

Equitable tolling under New Jersey law may arise "where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass,' or where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." *Cason v. Arie St. Police Dep't,* Civ. No. 10–497 (KSH), 2010 WL 2674399, at *5 n.4 (D.N.J. June 29, 2010) (quoting *Freeman v. State,* 347 N.J. Super. 11, 31 (Super. Ct. App. Div. 2002)). Again, the complaint does not articulate any basis for equitable tolling.

Finally, the Court notes that Mr. Jones states in his complaint that he "filed a notice of tort claim on March 11, 2015 and exhausted his administrative remedies on March 17, 2016." (ECF No. 1 ¶ 7.) The Court construes this reference to "exhaust[ing] his administrative remedies" as referring to a notice of tort claim under the New Jersey Tort Claims Act ("TCA") and, specifically, a letter dated March 17, 2016 that Mr. Jones received from the state Division of Risk Management. (*See* ECF No. 1 ¶¶ 27–28 & Ex.) This letter simply indicated that the Division had received his notice of tort claim and forwarded it to Rutgers Biomedical Health Sciences. (ECF No. 1, Ex.) The Court is cognizant that, under proper circumstances, efforts to exhaust prison administrative remedies, as required by the PLRA, may also serve to toll the limitations period. *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 602–03 (3d Cir. 2015); *Paluch v. Sec'y Penn. Dep't of Corr.*, 442 F. App'x 690, 694 (3d Cir. 2011) (per curiam); *Baskerville v. Jackson*, Civ. A. No. 15-6463 (CCC), 2016 WL 4487851, at *5 (D.N.J. Aug. 24, 2015). Nonetheless, the complaint's reference to exhausting administrative remedies seems to

refer to filing a notice of tort claim under the TCA, not pursuit of prison administrative remedies under the PLRA. *See Ali-X v. Hayman*, Civ. No. 10-4666 (JBS/JS), 2013 WL 1628953, at *2–5 (D.N.J. Apr. 16, 2013) (explaining that PLRA bars claims regarding prison conditions if available administrative remedies not exhausted, whereas TCA confers immunity to tort claims on public employees if timely notice of claim not filed). Thus, the Court finds that Mr. Jones has not pleaded any facts that would support tolling the limitations period on this basis.

It is therefore apparent from the face of the complaint that the § 1983 claims asserted are barred by the statute of limitations and must be dismissed.[4] *See Ostuni v. Wa Wa's Mart,* 532 F. App'x 110, 111–12 (3d Cir. 2013) (per curiam) ("Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under § 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim."); *Hunterson v. Disabato,* 244 F. App'x 455, 457 (3d Cir. 2007) (per curiam) ("[A] district court may *sua sponte* dismiss a claim as time-barred under 28 U.S.C. § 1915A(b)(l) where it is apparent from the complaint that the applicable statute of limitations has run.").

Even if Mr. Jones's complaint were timely, however, it still fails to adequately state a claim under § 1983. A plaintiff asserting a § 1983 claim for inadequate medical care must show the existence of a serious medical need and that facility staff demonstrated deliberate indifference to that medical need. *Pearson v. Prison Health Serv.*, 850 F.3d at 534; *Mattern v.*

---

[4] While he does not explicitly identify such a claim, it appears that the facts alleged by Mr. Jones could also be consistent with a state-law claim for medical malpractice. (*See* ECF No. 1.) A medical-malpractice claim is subject, however, to the same two-year statute of limitations as § 1983 claims, and thus would be untimely for the same reasons explained herein. *See* N.J. Stat. Ann. § 2A:14-2; *Caravaggio v. D'Agostini*, 166 N.J. 237, 244–45 (2001). Furthermore, without some accompanying federal claim and an exercise of supplemental jurisdiction or an establishment of diversity jurisdiction, this Court would lack subject-matter jurisdiction to hear such claims. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552–65 (2005).

*City of Sea Isle*, 657 F. App'x 134, 138 (3d Cir. 2016); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The Third Circuit has stated that "a medical need is 'serious' for purposes of a denial of medical care claim if it is either 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Mattern*, 657 F. App'x at 139 (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

A finding of deliberate indifference requires demonstrating that the defendant medical provider had the requisite state of mind, i.e., knowledge of a serious medical risk and disregard for that risk. *See Parkell v. Danberg*, 833 F.3d 313, 335, 337 (3d Cir. 2016); *Natale*, 318 F.3d at 582; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (finding that an Eighth Amendment violation requires a showing of "obduracy and wantonness"); *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (equating deliberate indifference with at least "reckless[] disregard [for] a substantial risk of serious harm."). "[T]he deliberate indifference standard 'affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients . . . ." *Pearson v. Prison Health Serv.*, 850 F.3d at 538; *see also Palakovic*, 854 F.3d at 227; *Parkell*, 833 F.3d at 337. The Third Circuit has identified a variety of circumstances that amount to deliberate indifference, such as: "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Parkell*, 833 F.3d at 337 (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Natale*, 318 F.3d at 582. A mere "inadvertent failure to provide adequate medical care"—i.e., negligent diagnosis or treatment—

9

will not create an Eighth Amendment claim. *Estelle*, 429 U.S. at 105–06; *Parkell*, 833 F.3d at 337.

Here, Mr. Jones does not allege any acts by the defendants that could be found to rise to the level of deliberate indifference. Nothing suggests that either Dr. Miller or Dr. Paloni left a metallic object in Mr. Jones's foot deliberately. While Mr. Jones alleges that Dr. Saud Do "totally disregarded" his explanation that the pain was in the location that Dr. Paloni injected anesthetic, he also alleges that Dr. Saud Do "ordered an 'Ultrasound' of plaintiff's right leg and lower extremities." (ECF No. 1 ¶¶ 20–22.) There is no indication that Dr. Saud Do in fact knew of the metallic object in Mr. Jones's foot and deliberately ignored it.[5] *See Pearson v. Prison Health Serv.*, 850 F.3d at 535–36 (noting that the state-of-mind inquiry on a deliberative indifference claim is a subjective standard). Indeed, Mr. Jones merely alleges that Dr. Saud Do "failed to take appropriate measures and assessment which would have revealed the foreign object that was left in his foot." (ECF No. 1 ¶ 30.) At most, these factual allegations may suggest medical negligence.[6]

It is possible, however, that Mr. Jones may be able to plead facts that would support tolling the statute of limitations or that would suffice to state a § 1983 claim. Thus, the complaint is dismissed without prejudice to Mr. Jones filing an amended complaint that would

---

[5] While the description of the interaction is somewhat ambiguous, if Mr. Jones had told Dr. Saud Do specifically that he suspected an object had been left in his foot, or there were some other indication that Dr. Saud Do knew this was the likely cause of pain, some level of deliberate indifference might be inferred. If Mr. Jones had such knowledge or suspicions at that time, however, the discovery rule would clearly permit the claim to accrue at that time, and the complaint would be untimely by several additional years. *See supra* p. 6 & note 2.

[6] As discussed above, *see supra* note 4, a claim for medical malpractice would also seem to be untimely, and, in any case, this Court would lack any basis to exercise jurisdiction over such a claim alone.

adequately state a timely claim. Any such amended complaint should be filed within thirty days after the date of this opinion and accompanying order.

## V.     CONCLUSION

For the foregoing reasons, the complaint in this matter is dismissed without prejudice.


DATED:  December 27, 2017                              /s/ Freda L. Wolfson
                                                                                The Honorable Freda L. Wolfson
                                                                                United States District Judge